**Susan J. MAHL, n/k/a, Susan J. Scott, John Nicklas and H.D. Vest Financial Services, Appellant–Defendant,**

**v.**

**Jim AARON, Appellee–Plaintiff.**

No. 46A03–0307–CV–283.

Court of Appeals of Indiana.

June 14, 2004.

---

Craig V. Braje, Elizabeth A. Flynn, Braje & Nelson, LLP, Michigan City, IN, Attorneys for Appellant.

Ronald D. Foster, Botkin & Hall, LLP, South Bend, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Susan Mahl (a/k/a Susan Scott), a South Carolina resident, appeals the trial court's order allowing Jim Aaron to execute a judgment against individual retirement accounts ("IRAs") that she opened in Indiana. We find that the trial court properly applied Indiana law to resolve the dispute and that as a non-domiciliary Mahl is not entitled to exempt her IRAs from execution under Indiana Code § 34–55–10–

2(b)(6). Moreover, we find that Mahl waived her Equal Privileges and Immunities challenge to Indiana Code § 34–55–10–2(b)(6) and that her Full Faith and Credit challenge to that section fails. Finally, we find that Mahl does not have standing to challenge Indiana Code § 34–55–10–2(b)(6) based on South Carolina's legitimate interests. Consequently, we affirm.

### Facts and Procedural History

Mahl and Aaron were involved in a romantic relationship from 1998 until 2001. During this relationship, Mahl was the managing partner at the California law firm of Mahl Rehon Walworth & Roberts. While serving as the managing partner, Mahl embezzled nearly $750,000 from the firm. Mahl resigned from the firm in 1999, and she later moved to South Carolina, where she continues to reside. The firm subsequently changed its name to Rehon & Roberts. In January 2000, Rehon & Roberts filed a complaint for damages against Mahl in the Santa Clara County Superior Court in California, which alleged fraud and deceit, breach of fiduciary duty, conversion, and other related causes of action. On September 17, 2001, the Santa Clara County Court entered judgment against Scott in the amount of $1,039,834.91 plus attorneys' fees and costs.[1] Rehon & Roberts assigned this judgment to Aaron for purposes of collection.

Meanwhile, Mahl opened IRAs with John Nicklas at his office in LaPorte, Indiana, in March and August 2000, under the names Jeanne E. Ginther[2] and Susan J. Mahl for the benefit of Susan J. Scott.

---

1. We arrived at the $1,039,834.91 judgment by adding the general damages award ($749,572.37), the punitive damages award ($150,000.00), and the pre-judgment interest award ($140,262.54). Appellant's App. p. 132–33.

2. Jeanne E. Ginther is Mahl's mother. Ginther's March 15, 2000, IRA application listed Mahl as her sole beneficiary. Ginther passed away on June 22, 2000.

Nicklas placed the investments with HD Vest Financial Services. Sometime after August 2001, Mahl changed her name to Susan Scott.[3]

In December 2001, Aaron filed a complaint against Mahl (a/k/a Susan Scott), Nicklas, and HD Vest Financial Services in the LaPorte Circuit Court, which sought to domesticate the California judgment rendered against Mahl and to enjoin Mahl from removing or diminishing the value of assets in the possession of Nicklas and HD Vest Financial Services. In response, Mahl filed a Motion to Dismiss for Lack of Personal and/or In Rem Jurisdiction.[4] Following a hearing, the trial court granted Aaron's request for a temporary restraining order and denied Mahl's motion to dismiss. Mahl then asked the trial court to certify the denial of her motion to dismiss for interlocutory appeal. The trial court denied Mahl's request for certification after holding a hearing on the matter. Additionally, Aaron filed a motion for summary judgment with the court. The trial court granted Aaron's motion, ordering Mahl to pay $1,122,389.63 plus costs.[5] Mahl did not appeal this ruling. Subsequently, Aaron filed a Proceedings Supplemental and Petition for Rule to Show Cause.

At the proceedings supplemental hearing, it was discovered that Mahl transferred at least some of the Indiana IRA funds to IRAs in South Carolina in violation of the trial court's restraining order. Aside from the discovery that Mahl violated the restraining order, the primary issue raised at the hearing revolved around choice of law; thus, the trial court ordered the parties to submit post-hearing briefs on that issue. After considering the post-hearing briefs, the trial court issued the following Order:

The court having heard the evidence and being duly informed now finds:

1. The Disposition of the Defendant's IRAs is governed by Indiana law.

2. The Defendant is not entitled to exemptions under IC 34–55–10–2(b).

3. The removed assets under the Restraining Order cannot be ordered back to Indiana.

4. The Defendant is in violation of the Court Order of December 27, 2001[,] and after having notice and the opportunity to defend is found to be in contempt. The Defendant may purge herself of this contempt by returning the assets to Indiana. The Court reserves imposing sanctions against the Defendant. Plaintiff may set the issue of sanctions for hearing.

5. The Property in South Carolina cannot be deeded to the Plaintiff.

3. Aaron avers in an affidavit attached to his complaint that Mahl confided in him that she was changing her name to "Susan Scott for the purpose of preventing her former partners from executing against her assets." Appellant's App. p. 22.

4. Additionally, on January 16, 2002, Mahl moved the Santa Clara County Superior Court to set aside the California judgment. The Santa Clara County court denied Mahl's motion. Thereafter, on April 5, 2002, Mahl filed a notice of appeal of the Order Denying Judgment Debtor's Motion to Set Aside Judg-

ment and Discovery Order with the Sixth Appellate District of the California Court of Appeal. The Sixth Appellate District affirmed the trial court's order in an unpublished opinion. *Rehon & Roberts v. Mahl*, No. H024329, 2003 WL 22810438 (Cal.Ct.App. Nov. 25, 2003).

5. The trial court arrived at the $1,122,389.63 judgment by adding the original California judgment ($899,572.37), the pre-judgment interest award ($140,262.54), and the post-judgment interest award ($85,554.72). Appellant's App. p. 46.

Appellant's App. p. 9–10. Mahl now appeals, challenging only the trial court's resolution of the choice of law and exemption issues.

## Discussion and Decision

Mahl raises several issues on appeal. First, Mahl claims that the trial court erred by selecting Indiana law to determine whether Mahl's IRAs were exempt from execution. Next, Mahl claims that Indiana Code § 34–55–10–2(b)(6) violates the Equal Privileges and Immunities Clause of the Indiana Constitution. Mahl additionally argues that Indiana Code § 34–55–10–2 violates the Full Faith and Credit Clause of the United States Constitution by giving the Indiana judgment greater effect than it would have had in California. Last, Mahl asserts that denying her an exemption under Indiana Code § 34–55–10–2(b)(6) infringes upon the legitimate interests of South Carolina, Mahl's state of residence. We address each argument in turn.

### I. Choice of Law

Mahl argues that the trial court erred by applying Indiana's exemption law. We disagree. When determining whether personal property is subject to execution, Indiana law looks to the law of the state in which the property was located at the time the debt arose. *Jackson v. Russell*, 533 N.E.2d 153, 155 (Ind.Ct.App.1989), *reh'g denied, trans. denied; see also Gagan v. Monroe*, 269 F.3d 871, 874 (7th Cir.2001). Although Mahl has since moved at least a portion of the funds that Aaron seeks to attach outside of Indiana, at the time the debt arose—i.e., when the California judgment was domesticated in Indiana—the funds were located in Indiana. Consequently, the trial court properly applied Indiana law.

Moreover, we find the California Court of Appeal's decision in *DeLotel v. DeLotel*, 73 Cal.App.3d 21, 140 Cal.Rptr. 553 (1977), to be instructive. In *DeLotel*, Husband sought to quash a writ of execution for unpaid child support issued by a California court that his ex-wife had served upon the agency from which Husband received his pension. After the DeLotels divorced, Husband moved from California to Oregon. At the time the writ was served, Oregon allowed an exemption for pensions to its residents; but, California did not allow such exemptions for non-residents. In support of his motion to quash the writ, Husband tried to invoke the exemption for pensions under Oregon law. The California Court of Appeal rejected Husband's attempt, noting "[e]xemption laws pertain merely to the remedy and have no extra-territorial effect[,] and exemption laws of the forum apply." *Id.* at 24, 140 Cal.Rptr. 553. Further, the *DeLotel* court opined that "no rule of comity requires recognition of a foreign exemption law," and therefore, the California trial court properly applied its own exemption law instead of Oregon's exemption law. We find the rationale of the *DeLotel* court to be sound.

Mahl, however, argues that affirming the trial court's decision to apply Indiana law to the instant controversy will encourage judgment creditors to flock to Indiana to domesticate their judgments. We find this argument to be specious. First, Indiana is not the only state that limits its exemptions to residents or domiciliaries. For instance, South Carolina similarly restricts its exemption law to "debtors domiciled in the State." S.C.Code § 15–41–30(1). Second, it would be futile for a judgment creditor to domesticate a judgment in Indiana if the judgment debtor does not possess any property in the state of Indiana. Because of these considerations, we cannot agree that "to allow the trial court's order to stand could result in a boon to judgment creditors, unfair results

to judgment debtors, and possibly an acceleration of collection litigation in the courts or Indiana." Appellant's App. p. 15. Accordingly, we find no error in the trial court's decision to apply Indiana law to the facts of this case.

## II. Indiana Code § 34–55–10–2(b)(6)

■ Having decided that the trial court properly relied upon Indiana's exemption law, we now turn our attention to that statutory provision. Indiana's exemption law in pertinent part provides:

(b) The following property of a *judgment debtor domiciled in Indiana* is not subject to levy or sale on execution or any other final process from a court, for a judgment founded upon an express or implied contract or a tort claim:

\* \* \* \*

(6) An interest, whether vested or not, that the judgment debtor has in a retirement plan [6] to the extent of:

(A) contributions, or portions of contributions, that were made to the retirement plan:

(i) by or on behalf of the debtor; and

(ii) which were not subject to federal income taxation to the debtor at the time of the contribution;

(B) earnings on contributions made under clause (A) that are not subject to federal income taxation at the time of the judgment; and

(C) roll-overs of contributions made under clause (A) that are not subject to federal income taxation at the time of the judgment.

Ind.Code § 34–55–10–2(b)(6) (emphasis supplied). This statute unambiguously limits exemptions to Indiana domiciliaries. Because of this limitation, Mahl attacks the constitutionality of this provision. Specifically, she claims that the provision violates the Equal Privileges and Immunities Clause of the Indiana Constitution and contravenes the Full Faith and Credit Clause of the United States Constitution. Based on our review of the proceedings below, we find that Mahl waived her Equal Privileges and Immunities challenge by failing to raise it in the underlying action.[7] *See Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 916 (Ind.2001) ("[C]ourts will not pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause. This court has repeatedly held that questions of this character will not be decided unless such decision is absolutely necessary to a disposition of the cause on its merits.") (quotations omitted). Accordingly, we leave that issue for another day.

■ Mahl did, however, raise her Full Faith and Credit challenge during the underlying proceedings. Therefore, we ad-

---

6. "Retirement plan," for purposes of Indiana Code § 34–55–10, includes:
(1) a stock bonus, a pension, a profit sharing, an annuity, or a similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan;
(2) a government or church retirement plan or contract; or
(3) an individual retirement annuity or individual retirement account;
that is intended in good faith to qualify as a retirement plan under applicable provisions

of the Internal Revenue Code of 1986, [26 U.S.C.A. § 1 et seq.] as amended.
Ind.Code § 34–6–2–131.

7. We acknowledge that Mahl raised a federal equal protection argument below; however, she failed to include a similar argument on appeal. Instead, in her appellate brief, Mahl only argues that Indiana Code § 34–55–10–2(b)(6) violates Indiana's Equal Privileges and Immunities Clause—an argument she did not present to the trial court.

dress this argument. Mahl claims that denying her an exemption for her IRAs violates the Full Faith and Credit Clause of the United States Constitution. Specifically, Mahl asserts, "the denial of her property exemption claim results in giving the Indiana judgment greater effect than it would have in California, which is the originating state of the judgment." Appellant's Br. p. 21. The Full Faith and Credit Clause mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. The United States Supreme Court has explained that full faith and credit means, "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *see also Krilich v. Soltesz/Brant Dev. Co.*, 771 N.E.2d 1169, 1172 (Ind.Ct. App.2002), *reh'g granted in part, trans. denied.*

 Full faith and credit, however, does not mean that states must adopt the practices of other states regarding the time, manner, and mechanisms for enforcing judgments. *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the even-handed control of forum law. *Id.; see also McElmoyle ex rel. Bailey v. Cohen*, 38 U.S. 312, 325, 13 Pet. 312, 10 L.Ed. 177 (1839) (judgment may be enforced only as "laws [of enforcing forum] may permit");

Restatement (Second) of Conflict of Laws § 99 (1969) ("The local law of the forum determines the methods by which a judgment of another state is enforced.").

Essentially, Mahl contends that because Aaron would not be able to proceed against any retirement accounts she held in California,[8] he should not be able to proceed against any retirement accounts she holds in Indiana. To allow such action, Mahl continues, would give the judgment greater effect under Indiana law than it would have had under California law, which she claims violates the Full Faith and Credit Clause. This argument also is specious. The fact that Aaron would not be able to proceed against any retirement accounts Mahl held in California is not dispositive of his right to collect the California judgment under Indiana law. Allowing Aaron to domesticate the judgment in Indiana and to enforce that judgment by proceeding against Mahl's retirement accounts in Indiana, in accordance with Indiana collection law, does not give him greater rights in Indiana than he would enjoy in California. Under either state's laws, Aaron is entitled to receive the same amount of money; therefore, Aaron is given no greater rights under Indiana law. The difference between the two states' exemption laws lies in how judgments may be enforced. Because the Full Faith and Credit Clause does not require one state to adopt the enforcement measures of another state, we conclude that Indiana Code § 34–55–10–2(b)(6) does not violate Article IV, § 1 of the United States Constitution.

### III. Infringement on the Legitimate Interests of South Carolina

 Additionally, Mahl argues that literal application of the Indiana exemption

---

**8.** Under California law, any "natural person" may claim an exemption for qualified retirement funds "reasonably necessary for the support of the debtor and any dependents." *See* Cal.Code Civ. Pro. §§ 703.020(a), (b)(1) and 703.140(b)(10)(E).

statute—so as not to allow her to exempt her IRAs from execution because she is not domiciled in Indiana—infringes upon the legitimate interests of South Carolina. We find that Mahl does not have standing to raise this issue as she frames this argument as an infringement on the legitimate interests of South Carolina rather than an infringement on her individual interests. *See Schulz v. State*, 731 N.E.2d 1041, 1044 (Ind.Ct.App.2000) (delineating the prudential limitations of standing as follows: "A court will consider: (1) whether the party's complaint falls within the zone of interests protected by the statute in question; (2) whether other governmental institutions are more competent to address the question and (3) whether the plaintiff is asserting his own legal rights and interests instead of relying on the legal rights or interests of third parties."), *trans. denied.* Moreover, we note that it is unlikely that Mahl's interests are aligned with South Carolina's interests. After all, South Carolina similarly restricts its exemption for certain property to individuals domiciled within South Carolina. For South Carolina to argue that Indiana's statute infringes on its legitimate interests, it would have to renounce its substantially similar statute that also extends exemptions only to its domiciliaries. Therefore, we find Mahl does not have standing to raise South Carolina's legitimate interests.

Affirmed.

SHARPNACK, J., and MATHIAS, J., concur.