**Jim AARON, Appellant–Plaintiff,**

**v.**

**Susan J. SCOTT aka Susan J. Mahl; John Nicklas; and HD Vest Financial Services, Appellees–Defendants,**

**and**

**Merrill Lynch, Pierce, Fenner & Smith, Appellee–Garnishee–Defendant.**

No. 46A03–0504–CV–180.

Court of Appeals of Indiana.

July 21, 2006.

Rehearing Denied Sept. 11, 2006.

See also, 809 N.E.2d 953.

Ronald D. Foster, South Bend, IN, Attorney for Appellant.

Patrick D. Murphy, Boveri Murphy Rice & LaDue, LLP, South Bend, IN, Attorney for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Susan J. Mahl, aka Susan J. Scott, Bluffton, South Carolina, Appellee pro se.

**OPINION**

FRIEDLANDER, Judge.

Jim Aaron appeals the trial court's orders granting Susan J. Mahl's motion to quash (the March 22, 2005 order) and denying his motion for rule to show cause (the March 29, 2005 order), and presents the following restated issues on appeal:

(1) Did the trial court err when it concluded it did not have the power to compel the return of property to Indiana?

(2) Did the trial court err when it quashed the writ of execution?

(3) Did the trial court err when it concluded Merrill Lynch was not in contempt?

We affirm.

The underlying facts were set out by this court in a previous appeal, and are, in relevant part, as follows:

On September 17, 2001, [a] ... [California] [c]ourt entered judgment against [Mahl] in the amount of $1,039,834.91 plus attorneys' fees and costs.... [T]his judgment [was assigned] to Aaron for purposes of collection.

Meanwhile, Mahl opened [Individual Retirement Accounts (IRAs)] with John Nicklas ... in LaPorte, Indiana, in March and August 2000, under the names Jeanne E. Ginther and Susan J. Mahl for the benefit of Susan J. Scott. Nicklas placed the investments with HD Vest Financial Services [(HD Vest)]. Sometime after August 2001, Mahl changed her name to Susan Scott.

*Mahl v. Aaron,* 809 N.E.2d 953, 955–56 (Ind.Ct.App.2004) (footnotes omitted).

On December 19, 2001, Aaron filed a complaint in the LaPorte Circuit Court against Mahl, a/k/a Susan Scott,[1] Nicklas, and HD Vest, which sought to domesticate the California judgment and enjoin Mahl from removing or diminishing the value of assets in the possession of Nicklas and HD Vest. The trial court issued a temporary restraining order that day. On December 27, 2001, the trial court issued a permanent restraining order, and on October 24, 2002, entered judgment against Mahl and ordered her to pay Aaron $1,122,389.63 plus costs. In the interim, however, Mahl transferred funds in IRAs held in Indiana by HD Vest to IRAs in South Carolina held by Merrill Lynch, in violation of the trial court's permanent restraining order.

On October 31, 2002, Aaron filed proceedings supplemental and a petition for rule to show cause, claiming Mahl violated the permanent restraining order and asking the trial court to find her in contempt. The trial court issued an order on December 26, 2002 (the Freeze Order), that directed Merrill Lynch to place a 90–day hold on Mahl's accounts. Merrill Lynch did not implement the Freeze Order until January 3, 2002. By then, Mahl had liquidated approximately $9,300 of her IRAs

1. In her brief, Mahl refers to herself as "Susan Mahl f/k/a Susan Scott." *Appellee's Brief.* We will refer to her as Mahl, as we did in her original appeal.

held by Merrill Lynch. Quoting again from our previous opinion:

At the proceedings supplemental hearing, it was discovered that Mahl transferred ... IRA funds ... in violation of the trial court's restraining order. Aside from the discovery that Mahl violated the restraining order, the primary issue raised at the hearing revolved around choice of law.... After considering the post-hearing briefs, the trial court issued the following Order [on June 13, 2003]:

The court having heard the evidence and being duly informed now finds:

1. The Disposition of the Defendant's IRAs is governed by Indiana Law.

2. [Mahl] is not entitled to exemptions under IC 34–55–10–2(b).

3. The removed assets under the Restraining Order cannot be ordered back to Indiana.

4. [Mahl] is in violation of the Court Order of December 27, 2001, and after having notice and the opportunity to defend is found to be in contempt. [Mahl] may purge herself of this contempt by returning the assets to Indiana. The Court reserves imposing sanctions against [Mahl]. [Aaron] may set the issue of sanctions for hearing.

5. [Mahl's real estate] in South Carolina cannot be deeded to [Aaron].

Mahl now appeals, challenging only the trial court's resolution of the choice of law and exemption issues.

*Mahl v. Aaron,* 809 N.E.2d at 956–57 (internal citations omitted). Aaron did not appeal that order, including the trial court's conclusion it did not have the power to compel the return of the transferred funds.

On August 7, 2003, Aaron filed an *ex parte* praecipe for issuance of execution with the LaPorte Circuit Court clerk. The clerk issued an execution against property, which directed the St. Joseph County Sheriff to levy upon all of Mahl's assets held by Merrill Lynch. Merrill Lynch refused to comply with the writ on two separate occasions. On August 19, 2003, Mahl filed a motion to quash the writ of execution. In September 2003, Aaron filed suit against Merrill Lynch and Mahl in the U.S. District Court for the Northern District of Indiana, claiming Merrill Lynch violated the writ of execution. The federal district court stayed the federal action "pending resolution of nearly identical legal issues in state court proceedings...." *Appellant's Appendix* at 211. On March 7, 2005, Aaron filed a motion for rule to show cause as to why Merrill Lynch was not in contempt of the trial court's Freeze Order prohibiting the movement of Mahl's assets in Merrill Lynch's possession. On March 22, 2005, the trial court entered a memorandum and order that clarified its June 13, 2003 order as follows: (1) it explained that it could not compel the return of assets transferred from Indiana to South Carolina in violation of the Freeze Order according to the doctrine of *mobilia sequuntur personam;* and (2) it concluded that the writ of execution to the Sheriff should not have been issued, and therefore quashed the writ. On March 29, 2005, the trial court denied Aaron's motion for rule to show cause and concluded Merrill Lynch was not in contempt of the Freeze Order.

1.

■ Aaron appeals the March 22, 2005 order, contending the trial court erred when it concluded it did not have the power, pursuant to the doctrine of *mobilia sequuntur personam,* to compel the return to Indiana of funds in Merrill Lynch-managed IRAs that Mahl transferred to South Carolina. This, however, was not a new

"order," but rather a "clarif[ication of its] Order of June 13, 2003, ... [when] the Court entered the following Order (in part): ... 3. The removed assets under the Restraining Order cannot be ordered back to Indiana." [2] *Appellant's Appendix* at 10. The trial court explained:

> The June 13, 2003 Order indicates that this Court could not order the funds back to Indiana. The Court was and continues to be of the opinion that the attachment of Defendant [Mahl]'s personal property should be accomplished through a court in her state of residence or an appropriate federal court. See *Phillips v. Scalf,* 778 N.E.2d 480[ ] ("Indiana Courts have recognized that under the rule of 'mobilia sequuntur personam' the sit[u]s of intangible personal property is the legal domicile of the owner.")[.] Consequently, this Court does not have the ability to order the assets held by Merrill Lynch to be turned over to [Aaron] in partial satisfaction of the judgment.

*Id.* at 11. The portion of the March 22, 2005 order that addressed whether the trial court had the power to compel the return of transferred funds merely explained its June 13, 2003 order. Aaron did not challenge the trial court's finding in this regard in the previous appeal of the June 13, 2003 order. *See Mahl v. Aaron,*

809 N.E.2d 953. Aaron's claim, therefore, is procedurally defaulted. *See Williams v. State,* 808 N.E.2d 652, 664 (Ind.2004) ("claim that trial counsel was ineffective for not obtaining the information before trial is procedurally defaulted because the claim was not raised in the previous appeals to us").

### 2.

■ Aaron next contends it was error for the trial court to grant Merrill Lynch's motion to quash the writ of execution. Despite the trial court's determination that it did not have the power to compel funds to Indiana, the clerk of the LaPorte circuit court thereafter issued a writ of execution, directing the St. Joseph's County Sheriff to levy upon funds owned by Mahl in Merrill Lynch's possession. The trial court later concluded "the Writ of Execution to the St. Joseph County Sheriff should never have been issued." *Appellant's Appendix* at 11. The trial court stated at the outset of the hearing on the motion to quash the writ of execution "I neither signed nor authorized my signature on this order ... that was dated 3–7–05.... I would [ ] not have issued this order.... If I had seen this, I would have set it for hearing for today and I would not have signed that order.... I did not make that finding, and the record will reflect

---

**2.** Aaron attempts to distinguish the issue addressed in the June 13, 2003 order, which he frames as whether the trial court "could [ ] order Mahl to return the funds to the H.D. Vest account from which they had been wrongfully transferred[,]" from that of the March 22, 2005 order, which he frames as "whether Aaron can collect the account from Merrill Lynch through its South Bend office." *Appellant's Reply Brief* at 9. Although at first blush Aaron's distinction may appear meaningful, he fails to point out the funds Mahl transferred from HD Vest were *directly* transferred to Merrill Lynch. For purposes of the trial court's June 13, 2003 conclusion regarding those funds (i.e., that it lacked the power

to compel their return), the important fact was *not* that HD Vest no longer maintained the funds and Merrill Lynch did; rather, the critical fact was that the funds were located outside of Indiana, regardless of *who* maintained them. The trial court was fully aware the funds were transferred to Merrill Lynch, and that Merrill Lynch maintained an office in South Bend, when it concluded the funds could not be ordered back to Indiana. Aaron correctly asserts the trial court's conclusion was "not raised ... or at issue in the prior appeal[,]" but draws an erroneous conclusion therefrom. *Id.* By failing to challenge that conclusion in the previous appeal, Aaron waived it for purposes of future appeal.

that I'm revoking and rescinding that Order dated March 7th, 2005, in its entirety." *Transcript* at 5. Both Aaron's and Merrill Lynch's briefs address whether Indiana has jurisdiction over the funds transferred from Indiana to South Carolina and whether such funds may be reached by the writ of execution. Neither brief, however, addresses what we believe to be the dispositive issue. That is, may the clerk of a county circuit court issue a writ of execution in contravention of a valid court order? We answer that in the negative.

Ind. Trial Rule 72(C) states, in relevant part:

> All motions and applications in the clerk's office for issuing ... final process to enforce and execute judgments ... which do not require allowance or order of the court are grantable of course by the clerk; but his action may be suspended or altered or rescinded by the court upon cause shown.

Pursuant to this rule, a circuit court clerk may, without review by the trial court, issue, among other things, a writ of execution to enforce a judgment. We have uncovered no authority, however, supportive of the proposition that a circuit court clerk may issue an enforcement order directing execution on certain property where the trial court has previously concluded it lacks the power to reach such property. *See, e.g.,* Ind.Code Ann. §§ 33–32 *et seq.* (West, PREMISE through 2005 1st Regular Sess.). We decline to sanction such a theory. To do so would lead to the untenable conclusion that a circuit court clerk possesses the authority to override a valid court order. Where, as here, a trial court has issued a valid, effective order, a court clerk may not issue an enforcement directive in contravention of that order. Pursuant to trial rule 72(C), the trial court had the authority to, and did properly, rescind the clerk's writ of execution.

**3.**

Finally, Aaron contends the trial court erred when it concluded Merrill Lynch was not in contempt of the Freeze Order.

Ind.Code Ann. § 34–47–3–1 (West, PREMISE through 2005 1st Regular Sess.) provides:

> A person who is guilty of any willful disobedience of any process, or any order lawfully issued:
>
> > (1) by any court of record, or by the proper officer of the court;
> >
> > (2) under the authority of law, or the direction of the court; and
> >
> > (3) after the process or order has been served upon the person;
>
> is guilty of an indirect contempt of the court that issued the process or order.

■■■ Civil contempt is failing to do something a court in a civil action has ordered to be done for the benefit of an opposing party. *Flash v. Holtsclaw,* 789 N.E.2d 955 (Ind.Ct.App.2003), *trans. denied.* A party who has been injured or damaged by the failure of another to conform to or comply with a court order may seek a finding of contempt. *Id.* Punishment or refusal to punish for contempt is generally a matter within the trial court's discretion. *Clark v. Clark,* 404 N.E.2d 23 (Ind.Ct.App.1980). An abuse of discretion "occurs only when a trial court's decision is against the logic and effect of the facts and circumstances before it." *Harlan Bakeries, Inc. v. Muncy,* 835 N.E.2d 1018, 1040 (Ind.Ct.App.2005).

The trial court issued the Freeze Order on December 26, 2002, but the "earliest date [ ] the Court c[ould] use for service [was] December 30, 2002.... By that time, [ ] [Mahl] had written a check and liquidated assets to write an additional check." *Appellant's Appendix* at 14. The trial court, therefore, concluded, "[u]nder

the circumstances and facts submitted to the Court, the Court cannot find that Merrill Lynch committed a willful disobedience of the Freeze Order. Merrill Lynch placed a freeze on the accounts within a commercially reasonable time." *Id.*

■ Aaron contends the trial court erred in allowing Merrill Lynch a "commercially reasonable time" to freeze Mahl's accounts. *Id.* In support of his contention, Aaron claims the time permitted to comply with the Freeze Order is governed by Ind.Code Ann. § 34–25–3–3 (West, PREMISE through 2005 1st Regular Sess.), which provides: "From the day of the service of the summons, the garnishee is accountable to the plaintiff in the action for the amount of money, property, or credits in the garnishee's possession or due and owing from the garnishee to the defendant." Merrill Lynch, however, contends the time permitted to comply is governed by the Depository Financial Institutions Adverse Claims Act (the Adverse Claims Act), which provides, in relevant part:

(a) Upon receipt from an adverse claimant who is a money judgment creditor of the documents and process required under IC 28–9–3–4(b), a depository financial institution shall:

    . . .

(2) within a commercially reasonable time after receiving the documents and process, restrict withdrawal of funds in, or subsequently deposited into, the deposit account identified in the documents and process. . . .

Ind.Code Ann. § 28–9–4–2(a)(2) (West, PREMISE through 2005 1st Regular Sess.). Resolution of which time allowance applies depends upon whether: (1) Aaron was an "adverse claimant"; (2) Merrill Lynch is a "depository financial institution"; and (3) the accounts Mahl maintained with Merrill Lynch were "deposit accounts", within the meaning of the statute. *See id.* When construing statutory language, "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense. Technical words and phrases having a peculiar and appropriate meaning in the law shall be understood according to their technical import." Ind.Code Ann. § 1–1–4–1(1) (West, PREMISE through 2005 1st Regular Sess.).

I.C. § 28–9–2–3 states, " '[a]dverse claimant' means a person asserting an adverse claim." An "adverse claim" includes, among others, "[t]he claim of a money judgment creditor against a person who is . . . a depositor." I.C. § 28–9–2–2. Aaron was a money judgment creditor by virtue of the trial court's order entered on October 24, 2002, in which it domesticated a California judgment for Aaron against Mahl in the amount of $1,122,389.63.[3] Further, Mahl was a "depositor," defined as "a person who, according to records maintained by the depository financial institution, has an interest in a deposit account . . . [,]" I.C. § 28–9–2–4, because she was the owner of at least five accounts held by Merrill Lynch. Based on the foregoing, Aaron was an "adverse claimant" within the meaning of the Adverse Claims Act. *See First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187 (Ind. Ct.App.1987), *trans. denied.*

Further, I.C. § 28–9–2–6 states, in relevant part:

"Depository financial institution" means a financial institution that is organized . . . under . . . the law of another state. . . . The term includes:

---

**3.** This award constituted the sum of the original California judgment ($899,572.37) plus interest calculated according to California statutory law ($222,817.26).

(1) a commercial bank;

. . .

(8) an industrial loan and investment company; or

(9) a similar financial institution to those listed in subdivisions (1) through (8); if that financial institution has . . . a branch in Indiana.

Merrill Lynch is incorporated under Delaware law and describes itself as an investment bank. *See* Merrill Lynch, http://www.ml.com (last visited June 28, 2006). More importantly, the financial services Merrill Lynch provides render it an "investment company", and, therefore, a depository financial institution. *See Porter Dev. LLC v. First Nat'l Bank of Valparaiso*, 837 N.E.2d 558 (Ind.Ct.App.2005); *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180 (Ind.Ct.App.1996), *trans. denied.*

Finally, I.C. § 28–9–2–5 defines "deposit account" as "an account made by a depositor . . . with a depository financial institution. The term includes the following accounts: . . . (6) Savings[,] . . . (8) Checking[,] (9) Money market . . . [and] (13) Accounts similar to those listed in subdivisions (1) through (12)." Mahl maintained cash management, simplified employee pension, and individual retirement accounts with Merrill Lynch. These accounts are "similar to those listed in subdivisions (1) through (12)[,]" and constitute "deposit accounts". *See id.* Accordingly, the Freeze Order was governed by the Adverse Claims Act, and Merrill Lynch had a "commercially reasonable time" to comply. *See* I.C. § 28–9–4–2(a)(2).

■ The trial court issued the Freeze Order on December 26, 2002. For reasons that are unclear, Merrill Lynch did not become aware of the Freeze Order until December 30, 2002, and thereafter placed a freeze on Mahl's accounts on January 3, 2003. The trial court concluded "[u]nder the circumstances and facts submitted to the Court, . . . Merrill Lynch placed a freeze on the accounts within a commercially reasonable time." *Appellant's Appendix* at 14. Our review of the record has not clarified the reason for the four-day interval between the trial court's order and Merrill Lynch's awareness of that order. Aaron offers no explanation, and merely contends "there was no evidence to support the court's determination. . . ." *Appellant's Brief* at 25. The trial court, however, explained "[t]he service made by [Aaron] of the Freeze Order . . . was not in compliance with T[rial] R[ule] 4.6. No evidence was presented indicating who at Merrill Lynch might have received the Freeze Order." *Appellant's Appendix* at 14. During the hearing on Aaron's motion, Aaron's counsel stated, "[a]s part of that process we . . . took the . . . documents . . . and dropped them in [Merrill Lynch's] in box. And I can't tell you this for certain, but I assume then the receptionist the next day when they open up the mail, they start stamping everything that's come in." *Transcript* at 33–34. Based on the foregoing, we cannot conclude the trial court's determination that Merrill Lynch was not in contempt was contrary to the logic and effect of the facts, and, therefore, the trial court did not abuse its discretion.

Affirmed.

CRONE, J., and MAY, J., concur.