## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2016, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Buckhalter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 14, 2016

Court of Appeals Case No.
49A02-1511-CR-1852

Appeal from the Marion Superior Court

The Honorable Ronnie Huerta, Commissioner

Trial Court Cause No.
49F19-1405-CM-27225

**Pyle, Judge.**

# Statement of the Case

Christopher Buckhalter ("Buckhalter") appeals, following a bench trial, his conviction for battery as a Class A misdemeanor. He argues that the trial court abused its discretion in admitting into evidence the victim's show-up and in-court identifications of him. Concluding that the trial court did not abuse its discretion in admitting this evidence, we affirm.

We affirm.

# Issue

> Whether the trial court abused its discretion in admitting into evidence the victim's show-up and in-court identifications of Buckhalter.

# Facts

On May 24, 2014, the night before the Indianapolis 500, Nicholas Castorena ("Castorena") and his friends were camping in the Coke Lot ("the Lot") near the Indianapolis Motor Speedway. While Castorena and his friends were walking around the Lot, they came upon a group involved in an altercation with another man. One of Castorena's friends asked the group, "where's the party at?" (Tr. 24). Someone from the group responded to the comment by hitting Castorena's friend and knocking him to the ground. As Castorena attempted to intervene, he was hit in the back of the head. When he turned around, Castorena looked right at Buckhalter and clearly saw Buckhalter's face

before Buckhalter hit Castorena in the face. Castorena and his friends quickly turned and ran.

[4] Later that evening, Castorena and his friends came upon the same group. Castorena was hit again but did not see who it was. Gunshots were fired, and one of Castorena's friends was fatally wounded. Speedway Police Department Officers arrived at the scene, and Officer Matthew Pridemore ("Officer Pridemore") noticed Castorena, who was covered in blood. Officer Pridemore asked Castorena if he had been involved in the altercation, and Castorena responded that he had.

[5] While walking through the Lot with Officer Pridemore, Castorena pointed out the group of individuals that had been involved in the two altercations. These individuals were standing together and talking. They had not been detained by the police at that time. Officer Pridemore radioed a detective and asked the detective to detain these individuals. After the individuals were detained, Castorena identified Buckhalter as the man who had hit him in the face during the first altercation.

[6] The State charged Buckhalter with Class A misdemeanor battery. At trial, over Buckhalter's objection, Castorena identified Buckhalter as the person who had hit him in the face. However, according to Buckhalter, he was walking through the Lot when he was "snatched up from behind" without any warning and taken to the ground by a police officer who handcuffed him and took him to the

show up. (Tr. 145). The trial court convicted Buckhalter as charged. Buckhalter appeals.

# Decision

Buckhalter argues that the trial court abused its discretion in admitting evidence of the show-up and in-court identifications. The admission of evidence is within the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We will reverse a ruling on the admission of evidence only for an abuse of discretion, which occurs only when the ruling is clearly against the logic and effect of the facts and circumstances and the error affects the party's substantial rights. *Id.* at 260.

## I. Show-up Identification

Buckhalter first contends that the admission of the show-up identification into evidence violated his rights against unreasonable search and seizure under the Fourth Amendment to the United States Constitution because the police lacked reasonable suspicion to detain him for the show-up identification.[1] The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to brief investigatory stops of persons or vehicles that

---

[1] Buckhalter also argues that the admission of this evidence violated Article 1, Section 11 of the Indiana Constitution. However, we do not address state constitutional claims that are raised for the first time on appeal. *See Mahl v. Aaron,* 809 N.E.2d 953, 958 (Ind. Ct. App. 2004) (declining to address equal protection argument under Indiana Constitution when argument at trial was based only on federal constitution). Here, our review of the record reveals that Buckhalter did not raise the state constitutional claim at trial. Accordingly, he has waived this allegation of error. *See id.*

fall short of traditional arrest. *C.H. v. State*, 15 N.E.3d 1086, 1092 (Ind. Ct. App. 2014), *trans. denied*. However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with the rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot." *Moultry v. State*, 808 N.E.2d 168, 170-71 (Ind. Ct. App. 2004) (quoting *Terry v. Ohio*, 392 U.S. 266 (1968)). Reasonable suspicion must be more substantial than an officer's unparticularized suspicion or hunch. *C. H.*, 15 N.E.3d at 1092. In determining whether reasonable suspicion exists, we must examine the totality of the circumstances of each case to see whether the detaining officer had a particularized and objective basis for suspecting wrong-doing. *Id.*

[9] Here, Buckhalter specifically argues that the "State presented absolutely no evidence at trial as to why Buckhalter had been detained for the show-up." (Buckhalter's Br. 21). According to Buckhalter, "[s]imply being a black male at the Coke Lot on the night of May 24, 2014, was not the individualized articulable reasonable suspicion of criminal activity that *Terry* requires to justify a seizure." (Buckhalter's Br. 21).

[10] However, our review of the evidence reveals that Castorena was involved in two altercations with the same group, which included Buckhalter, on the same night. Following the second altercation, while Castorena was walking through the Coke Lot with Officer Pridemore, Castorena noticed and pointed out members of that group standing together and talking. Officer Pridemore

radioed a detective and asked him to detain these individuals. In a show-up, Castorena identified Buckhalter as the individual who had hit him in the face. Castorena, who was a witness to two altercations, provided the detaining officer with a particularized and objective basis for suspecting wrong-doing on the part of the individuals that he detained for the show-up. The trial court did not abuse its discretion in admitting this evidence.

## II. In-Court Identification

[11] Buckhalter also argues that pursuant to the fruit of the poisonous tree doctrine, the unconstitutional show-up identification "tainted the subsequent in-court identification." (Buckhalter's Br. 27). However, to invoke this doctrine, a defendant must show that the seizure was illegal in the first place. *Gyamfi v. State*, 15 N.E.3d 1131, 1136 (Ind. Ct. App. 2014), *reh'g denied*. Because there was no illegal seizure in this case, there can be no fruit of the poisonous tree, and Buckhalter's argument fails.

[12] Lastly, Buckhalter argues that the trial court erred in admitting the in-court identification because there was no independent basis for it. The factors a court considers in determining whether an independent basis exists include: (1) the amount of time that the witness was in the presence of the defendant; (2) the distance between the two; (3) the lighting conditions; (4) the witness' degree of attention to the defendant; (5) the witness' capacity for observation; (6) the witness' opportunity to perceive particular characteristics of the defendant; (7) the accuracy of any prior description of the defendant by the witness; (8) the

witness' level of certainty at the pretrial identification; and (9) the length of time between the crime and the identification. *Hyppolite v. State*, 774 N.E.2d 584, 594 (Ind. Ct. App. 2002), *trans. denied*.

[13] Here, our review of the evidence leads us to agree with the State that "application of the above-recited factors to this case shows that Castorena had a sufficient independent basis to support his ability to fairly identify [Buckhalter] in-court." (State's Br. 18). Specifically, Castorena had sufficient opportunity to view his attacker. After being hit in the back of the head, Castorena turned and looked right at Buckhalter. According to Castorena, he could "clearly see who [had] hit [him] in the face." (Tr. 130). Because Castorena was in extremely close physical proximity to Buckhalter, Castorena had a high degree of attention fixed on him. In addition, Castorena's identification of Buckhalter was certain. We find no error here, and the trial court did not abuse its discretion by admitting the in-court identification of Buckhalter.

[14] Affirmed.

Kirsch, J., and Riley, J, concur.