**UNION CENTRAL LIFE INS. CO., INC., Plaintiff,**

**v.**

**HAMILTON STEEL PRODUCTS, INC., et al., Defendants.**

**Tom WEBB et al., Defendants-Appellants,**

**v.**

**Agnes O'BRIEN et al., Defendants-Appellees.**

**No. 72–1219.**

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1973.

Decided March 11, 1974.

Gilbert Feldman, Chicago, Ill., for appellant.

Patrick W. Dunne, George Kaye, Chicago, Ill., for appellee.

Before FAIRCHILD, STEVENS, and SPRECHER, Circuit Judges.

FAIRCHILD, Circuit Judge.

This is an appeal from orders awarding fees to two attorneys in an interpleader action to determine rights in a fund. Each attorney appeared for named defendants who were, respectively, sued as representatives of a class of claimed beneficiaries of the fund. The fees were ordered paid out of the fund. The appeal has been taken by other named defendants who also purport to represent some or all of the beneficiaries.

Much of the relevant history of the case appears in opinions on earlier appeals in the same case, 374 F.2d 820 (7th Cir. 1967), and 448 F.2d 501 (7th Cir. 1971) ; and in a related case, United Steelworkers of America, A.F.L.–C.I. O. v. Hamilton Steel Products, Inc., 404 F.2d 878 (7th Cir., 1968).

Hamilton Steel Products, Inc., on the verge of bankruptcy, terminated employment of its factory employees in late 1964, and failed to make the payment required December 15, 1964 on an annuity policy maintained as a means of funding its pension plan. Union Central Life Ins. Co., the insurer, brought this interpleader action September 2, 1965 to determine the rights in funds deposited with it by Hamilton.

Hamilton and the bankruptcy trustee were defendants. Other named defendants were sued in their own behalf and as representatives of others in several classes. Class B included a number of Hamilton employees in whom certain Prior Benefits under the policy had already been vested, payable upon termination of employment. Ultimately all members of Class B were named defendants. Class C included all factory employees of Hamilton as of December 15, 1964; Class D, all who had been terminated on certain dates shortly before December 15. The pension plan had been the product of collective bargaining with the Steelworkers union. Officers of the local and a district representative were named as defendants in their own behalf and as representatives of union members and officers as a class. All members of Class B were members of Class C, and, all members of Classes B, C, and D were members of the union or at least employees in the unit for which the union was the collective bargaining representative.

On September 20, 1965, attorney Kaye, one of the attorneys whose fees are at issue, entered an appearance for 18 (later 20) of the 32 Class B defendants, and three days later for the named defendants representing Class C. On September 27, 1965, attorneys Cornfield and Feldman (who are attorneys for the union) entered an appearance for the named union officer defendants. No one then appeared for the defendants representing Class D.

There seems to have been universal agreement that the members of Class B were entitled to receive the payment of Prior Benefits. On April 28, 1966 the district court ordered payment to those members of Class B for whom Kaye had appeared. Kaye had an agreement with some, apparently 20, of the members of Class B that he would be paid a fee equal to 20% of the aggregate recovery provided it exceeded $25,000. At one point he indicated he would be willing to accept a fee of 10% of the entire Class

B fund, apparently on the supposition that Class B recovery would be about $45,000 and 10% thereof would be almost as much as 20% of $25,000.

The union attorneys, in the name of the union, asserted that the limitation of the award to those members of Class B represented by Kaye was discriminatory, and moved that the decree be vacated or amended. A resulting contest over the union's role in the enforcement of the rights in the fund of those included in the bargaining unit led to the union's unsuccessful attempts to intervene in its own name in this action, Union Central Life Ins. Co. v. Hamilton Steel Products, Inc., 374 F.2d 820 (7th Cir., 1967), and to commence a separate action for declaratory judgment. United Steelworkers v. Hamilton Steel Products, Inc., 404 F.2d 878 (7th Cir., 1968). In any event, the district court ultimately, June 9, 1967 (over opposition of Mr. Kaye) amended its first decree so as to require payment of Prior Benefits to all members of Class B, and these amounts were later paid. The record does not disclose further reference to attorney Kaye's agreement with some of the members of the group for a contingent fee for his services as to Class B.

On March 21, 1969, attorney Dunne, whose fees are also presently at issue, appeared for the defendants named as representatives of Class D.

Originally the trustee in bankruptcy had claimed all the fund remaining after payment of Prior Benefits to Class B. On October 1, 1969, however, without any submission of that issue to the court for decision, he modified his position and apparently conceded that 27 (later 25) members of Class C who had completed 15 years of service for Hamilton by December 15, 1964 had rights in the fund even though they had not attained the age requirement of 65 years. He asserted the right to any excess remaining after satisfying the rights of the 15 year group. The union officer defendants agreed that the 15 year group should have prior claim, but contended that any excess should go to the benefit of the other employees. It developed that if the fund were to be applied first to fulfill the anticipated pension rights of the 15 year employees, there would be a deficit rather than a surplus.

It seems, at least by hindsight, that the 15 year group should have been treated as a separate class or sub-class, at least from that time forward. We shall refer to this group as Subclass C–1 and the remainder of Class C as Subclass C–2. The difficulty of simultaneous representation of Subclass C–1 and Subclass C–2 was later recognized by this court. "Both the union representatives and the Trustee have capably and strenuously, however, advanced the interest of [Subclass C–1], without which we might well have been of the opinion that their interests had not been fairly represented." 448 F.2d at 504.

On February 27, 1970, the district court entered judgment awarding the then balance of the fund, $119,339.02 to Subclass C–1, divided ratably according to the difference between the present actuarial value of anticipated monthly benefits and the prior benefits already received. Kaye and Dunne filed appeals on behalf of their clients, although, of course, Kaye's clients were nominally the representatives of Subclass C–1 as well as C–2. This court reversed the award of the entire balance to Subclass C–1, and remanded for recalculation of benefits in which all members of Classes C and D would share. Appellants were allowed to recover costs on appeal from the fund.

On remand the parties were able to agree on a formula for calculation of ratable shares in the fund (with a minimum payment of $50 to any individual), except that the union officer defendants opposed the award of attorney fees to Kaye and Dunne and subtracting such amount from the entire fund before computing the respective shares. The district court, without adverting to the objections, allowed Kaye fees of $32,210.50 and unreimbursed expense of $154.00, allowed Dunne fees of $8,000.00, and expense of $31.50, and subtracted these amounts from the fund before

computing the shares of the beneficiaries. The fund had increased by the accrual of interest.

The result of the appeal and the impact of the fees may be summarized as follows:

| Class | No. in class | Share awarded by judgment appealed from | | Share reflecting decision on appeal | | Portion of fees taken from share | Net distribution |
|---|---|---|---|---|---|---|---|
| C–1 | 25 | 100% | $119,339.02 | 38.44% | $ 49,489.49 | $15,460.37 | $34,029.12 |
| C–2 | 158 | | none | 59.52% | 76,628.59 | 23,938.65 | 52,689.94 |
| D | 28 | | none | 2.04% | 2,626.22 | 820.48 | 1,805.74 |
| | | | | | 128,744.30 | 40,219.50 | 88,524.80 [1] |

1. The expenses allowed to the attorneys are not included in the total fund nor the fees. The figures are necessarily approximate since a number of individual shares would have been less than $50, but for agreement on remand that the minimum payment would be $50. In our computation we treated the $50 in each of these cases as the amount of the share.

———◆———

The total fees awarded to both attorneys amounted to 31% of the fund, and the share of each beneficiary was thus reduced by that percentage. (Apparently those in Subclasses C–1 and C–2 who were also in Class B received their Prior Benefits without reduction for attorneys' fees, so far as the record discloses.) The fee awarded to Kaye was equivalent to approximately 45% of the total share of Subclass C–2, and the fee awarded to Dunne was more than three times the total share of Class D.

There are several general principles which must be applied in determining the propriety and amount of allowance of attorneys' fees out of a fund or against an adversary.

■ There may be an allowance of expenses to a plaintiff who "has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself." Mills v. Electric Auto-Lite, 396 U.S. 375, 392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970). Anno.: Attorneys' Fees in Class Actions, 38 ALR3d 1386. A party who has produced or preserved a common fund for the benefit of a group may be reimbursed for expenses of litigation. *Mills*, p. 392, 90 S.Ct. 616. Anno.: Right of Counsel Fees in Federal Court, 8 L.Ed.2d 894, 905.

"In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudication thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of the trust as a whole." In re Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 740 (1949).

"Though the right to charge counsel fees as costs out of the fund or estate in controversy, in a proper case, is well established, it is recognized that the practice of allowing such fees is subject to great abuse and should be exercised with the most jealous caution in regard to the rights of litigants to avoid bringing the administration of justice into reproach." 20 Am.Jur.2d, Costs, § 83.

■ The amount of benefit to those whose interests are to be charged is one of a number of appropriate considerations. 20 Am.Jur.2d, Costs, § 78. Anno.: 38 ALR3d 1386, 1404.

■ The fund in this case was created and brought into court for determination of rights by the interpleader plain-

tiff, Union Central. Although the action was pending for a long period, there were no issues of fact to be tried. All necessary facts appear to have been provided from the records of Hamilton, and all computations appear to have been made by representatives of Union Central. Initially, the trustee of the bankrupt estate claimed the fund, but he ultimately surrendered that position without any consideration or decision by the court of his claim. There is nothing in the record to suggest that his change of position was accomplished by attorneys Kaye or Dunne. Accordingly the charge of attorneys' fees against the fund can not be justified on the theory that the attorneys' efforts created the fund or preserved it for the employee-beneficiaries.

Mr. Kaye represented certain claimants throughout the life of the action, Mr. Dunne only at a later interval. The presence of representatives may arguably have been necessary under the theory of *Atwood's Trust, supra*. Although this might justify an allowance of some amount of attorneys' fees out of the fund, particularly if the share of the fund accruing to the respective classes of beneficiaries was insufficient, the value of the contribution made by the respective services must be closely scrutinized. Attorneys for the union officer defendants were present at all times, and there is no reason to doubt the good faith of their interest in a fair and equitable distribution of the fund among employees as beneficiaries, nor of their desire to see the distribution accomplished with as little expense to the employee beneficiaries as possible. Since the preference of the union attorneys for arbitration was determined to be legally unsound, the efforts of counsel who resisted the position of the union officer defendants in the district court and on appeal must be recognized as valuable, but counsel for Union Central and the trustee, as well as Mr. Kaye, provided those services.

Mr. Kaye and Mr. Dunne both sought to have the benefit of the fund spread beyond Subclass C–1. They succeeded in this court on the 1971 appeal. Except, however, for conflict between Subclass C–2 and Class D, they had a common interest and their efforts were duplicative. In prevailing, Kaye obtained a share for Subclass C–2, amounting to $76,628.59 and Dunne a share for Class D, amounting to $2,626.22, taken away in both instances from Subclass C–1, to which the district court had awarded the entire fund.

We must and do conclude from the record that the services rendered by Kaye and Dunne on the 1971 appeal and in the district court immediately preceding, were in great measure duplicative of each other, that the district court erred in failing to consider the objection to fees raised by counsel for the union officer defendants, and that the allowances made were excessive.

The petition for fees for the services of Mr. Dunne included 205.45 hours, the allowance of $8,000 being for 200 hours at $40 per hour. 65.55 hours were charged from his first conference in the matter (January 1, 1969) to February 27, 1970, when the district court entered judgment in favor of Subclass C–1; 135.90 hours were charged during the pendency of the appeal; and 4.50 hours thereafter. A fee of three times the share recovered for Class D can not, in our opinion, be justified.

The petition for fees submitted by Mr. Kaye sought $32,219.50. In view of the very meticulous inclusion of many time charges for telephone conversations with pensioners and other attorneys, we think that a "catchall" item of 38 hours "Miscellaneous unrecorded calls from pensioners and attorneys at ½ hr. per mo. for 76 mos." (for which $1520 was charged) must be eliminated. We have also eliminated an item of 24 hours, spread over four days, for "Preparing petition", which must have been, from the dates, the petition for fees, and for which $960 was charged. It consisted of 17 pages of itemized services charged, presumably taken from records,

a one page petition, and copies of three invoices, and of a bar association suggested minimum fee schedule.

From September 14, 1965 to April 28, 1966, at the time of the decree in favor of Class B members represented by him, he charged for 47.20 hours. From then until May 26, 1967, when the mandate was issued after the first appeal, he charged for 139.35 hours. From then until February 27, 1970, the date of the district court judgment in favor of Subclass C–1, he charged for 173.80 hours. From then until November 1, 1971, the date of the mandate on the 1971 appeal, he charged for 149.60 hours, and thereafter he charged for 10.25 hours.

Our examination of the record leaves us with the firm impression that the time charges were over generous. Mr. Kaye did not confine himself to the $40 per hour fee claimed by and awarded to Mr. Dunne, but charged higher rates for court appearances and certain types of conferences and the like. The total of all the hours claimed, after eliminating the item for miscellaneous phone calls and the item for preparing the petition for fees, was 520.20. At the $40 hourly rate used by Dunne, this would have amounted to $20,808, rather than the amount claimed.

■ We note the character of the fund involved as earned benefits of factory employees of a bankrupt employer, and we observe the admonition that charges of attorneys' fees against any fund should be scrutinized "with the most jealous caution."

Concluding as we do, that the awards were clearly excessive, we reach the question whether the new allowance should be made in the district court, with the advantage of further hearing, or by this court, with the advantage of recent study of the record. Since the support for the claim for fees is entirely documentary, and since a large share of the services were performed in this court, we have decided to make the decisions here.

We conclude that Attorney Kaye, who appeared throughout the pendency of the action, including two appeals, is awarded $10,000 as his total fee, with $2,000 thereof charged ratably against the individual shares of all members of Class C and $8,000 ratably against the individual shares of the members of Subclass C–2. Since the fee originally awarded has been paid to him, the difference must be refunded, with interest at the legal rate. Attorney Dunne, who appeared later in the action and in the 1971 appeal, for the representatives of Class D, which Class recovered a share of $2626.22, is awarded $2,500 as his total fee. Since $820.48 has already been taken out of the total share of Class D, and since the amounts paid to the members of that Class were in all but two cases the $50 minimum, the distribution to Class D is not to be changed. The $1,679.-52 balance of his allowed fee is to be charged ratably against the individual shares of all members of Class C. Refund of the difference with interest will also be required from him.

A new determination of the amounts of the individual shares of members of Class C is to be made in the light of the adjusted charges for attorneys' fees, and the amounts refunded are to be distributed to the members of Class C accordingly.

The clerk of this court is directed to enter judgment reversing the judgment appealed from insofar as it awarded attorneys' fees, and remanding the cause with directions to require refunds and make distributions consistent with this opinion.