In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1877

WOLVERINE MUTUAL INSURANCE,

*Plaintiff-Appellee*,

v.

JOHNNY VANCE, DAWN VANCE,
JOHNNY R. TINSLEY (VANCE), BY AND
THROUGH HIS NATURAL PARENT AND GUARDIAN
AND NEXT FRIEND, PAMELA TINSLEY, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 00 C 768—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED DECEMBER 3, 2002—DECIDED APRIL 10, 2003

Before EASTERBROOK, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.*

## I.

Wolverine Mutual Insurance Co. filed a declaratory action in federal court seeking to determine the extent of the coverage owed to policyholder Michael Gingery and, in

turn, the victims of his crime. The district court, in granting summary judgment in Wolverine Mutual's favor, concluded that Gingery's coverage did not provide for his defense or indemnification in the subsequent civil suit brought by his victims because Gingery had been found guilty in state court of the intentional crime of attempted murder. We affirm.

## II.

On May 3, 2000, Michael Eugene Gingery shot Johnny Ray Vance after an altercation near the street outside Gingery's house. At the time of the offense, Gingery had a homeowner's insurance policy with Wolverine Mutual Insurance Co. ("Wolverine") that excluded from coverage for personal liability those actions expected or intended by the insured. Gingery was subsequently prosecuted for attempted murder, and, while the criminal trial was proceeding, Johnny Ray Vance and Dawn Vance, and Johnny Ray Tinsley and Kacey Tinsley[1] (hereinafter "plaintiffs") filed two separate civil complaints against Gingery in the Elkhart, Indiana superior court. The complaints alleged, in part, that Gingery negligently and carelessly shot Johnny Vance and proximately caused damages to all of the plaintiffs. In December 2000, Wolverine filed a complaint in federal court for declaratory judgment seeking to establish its duties and obligations under Gingery's homeowner's insurance.

On July 18, 2001, a jury found Gingery guilty of attempted murder, a verdict that required the jury to find specific

---

[1] Johnny Ray Tinsley and Kacey Tinsley bring their action through Pamela Tinsley. Pamela Tinsley and Johnny Ray Vance are the parents of Kacey and her brother Johnny.

intent under Indiana Code § 35-41-5-1. In light of this verdict, Wolverine filed a motion for summary judgment in its declaratory judgment action, claiming that Gingery's conviction for an intentional act precluded liability coverage.

The district court granted summary judgment in Wolverine's favor, concluding that Wolverine did not owe Gingery a duty to defend or indemnification under the policy because his criminal conviction for attempted murder required a jury to find that his acts that led to the plaintiffs' injuries were intentional. The court also concluded that, although the plaintiffs were free to allege that Gingery had acted negligently in their civil suit, that would not trigger coverage under Gingery's homeowner's policy because Wolverine's contractual obligations run only to Gingery. The plaintiffs appeal.[2]

---

[2] Michael Gingery did not oppose the summary judgment motion in the district court, and he does not participate in this appeal. Even though the plaintiffs are not a party to Gingery's and Wolverine's insurance contract, we have held that a tort victim may appeal from a declaration that a policy of insurance is inapplicable, even if the insured does not participate in the appeal. *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1153 (7th Cir. 1995). However, the plaintiffs only have standing to appeal the district court's determination that Wolverine owes no duty to indemnify. The plaintiffs do not have standing to appeal the district court's finding that Wolverine does not have a duty to defend Gingery. As we stated in *Grinnell*, "an appellant must seek *relief* rather than injury at the hands of the court of appeals." *Id.* at 1154. Because the plaintiffs cannot show how they will gain by providing Gingery with a better defense at his civil trial, they have no standing to appeal the district court's decision that Wolverine does not owe Gingery a duty to defend in their civil action.

### III.

The plaintiffs argue that the district court erred as a matter of law when it concluded that Wolverine did not owe Gingery indemnification under his homeowner's insurance policy. They contend that, under Indiana law, the conviction of a policyholder of a crime that includes intent as an element does not negate the contractual obligation the insurance company has to provide indemnification to the policyholder. This court reviews the district court's grant of summary judgment de novo, construing all facts in favor of the plaintiffs, the nonmoving party. *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs. Ltd.*, 259 F.3d 792, 795 (7th Cir. 2001). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In this case we sit in diversity, and therefore we are required to apply the substantive law of the forum state, Indiana. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In fulfilling the mandate of *Erie*, we must apply the law of the state as we believe the highest court of the state would apply it. S*tate Farm Mutual Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). The plaintiffs argue that, pursuant to Indiana precedent, they are not estopped from arguing Gingery's intent in a civil action despite his criminal conviction. They further contend that, because they are permitted to allege that Gingery was negligent, Wolverine is obligated to indemnify Gingery pursuant to his homeowner's policy.

We agree with the plaintiffs with respect to their first argument. Collateral estoppel would not apply to the plaintiffs in this scenario because that doctrine only pre-

cludes a party from relitigating those issues already litigated and decided. *Doe v. Tobias*, 715 N.E.2d 829, 831 (Ind. 1999); *see also, Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 739 (7th Cir. 1999). Trial courts must consider two factors in determining whether to apply collateral estoppel: "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances" of the particular case. *Tofany v. NBS Imaging*, 616 N.E.2d 1034, 1037 (Ind. 1993). Because a tort victim does not have an opportunity to litigate on his own behalf in a criminal proceeding, Indiana courts have held that a tort victim is not collaterally estopped from relitigating the insured's intent despite a verdict or a guilty plea in a criminal trial. *Meridian Ins. Co. v. Zepeda*, 734 N.E.2d 1126, 1132 (Ind. Ct. App. 2000). *See also, Kimberlin v. DeLong*, 637 N.E.2d 121, 125 (Ind. 1994).

The Indiana Court of Appeals addressed the issue of offensive collateral estoppel in a context very similar to the case at hand in *Meridian Insurance Co. v. Zepeda*, 734 N.E.2d 1126 (Ind. Ct. App. 2000).[3] In *Zepeda*, the insurer filed a declaratory judgment action in Indiana state court claiming that it had no duty to indemnify its insured, Zepeda, in a personal injury action filed by his shooting victim, King, after a criminal jury found Zepeda guilty of aggravated battery. *Id.* at 1129. Meridian's policy excluded coverage for "expected or intended acts." *Id.* Merid-

---

[3] When used "defensively," collateral estoppel forecloses a plaintiff from asserting a claim that the plaintiff had previously litigated and lost against another defendant. "Offensive" collateral estoppel bars a defendant from relitigating an issue the defendant previously lost against another plaintiff. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979).

ian sought to collaterally estop both Zepeda and King from litigating the issue of Zepeda's intent, after the jury in Zepeda's criminal case found his acts to be intentional in finding him guilty of aggravated battery. *Id.* The court found that King could litigate the issue of Zepeda's intent because King, as the victim, never had a full and fair opportunity to litigate this issue in the criminal trial. *Id.* at 1128, 1131-32.

However, the court found that Zepeda, the insured, was precluded from relitigating the issue of his intent because none of the policy concerns applicable to civil defendants in using offensive collateral estoppel was applicable to Zepeda. *Id.* at 1130. Zepeda, and, by analogy, Gingery, each had the incentive and opportunity to litigate the issue of intent in his previous criminal prosecution. In this case, the district court held that Gingery could not establish why collateral estoppel should not apply, and he does not appeal that decision. Gingery is therefore precluded from arguing that he did not intentionally injure Vance. *Cf. Snodgrass v. Baize*, 405 N.E.2d 48, 55 (Ind. Ct. App. 1980) (holding that evidence of a previous criminal conviction for intentional conduct was sufficient to uphold trial court's finding in subsequent civil suit that defendant had acted intentionally).

This preclusion prevents us from agreeing with the plaintiffs' second argument, that Wolverine owes Gingery indemnification in their civil suit. Even though a third-party victim may pursue legal theories in a civil action that an insured may not, the plaintiffs have not cited any Indiana precedent for the proposition that an insurance company must indemnify the insured based on that civil action. In fact, the case law in Indiana supports the opposite conclusion. Indiana is not a "direct action" state, meaning that an injured third party may not bring

a direct action against a wrongdoer's liability insurer until he first obtains a judgment against the insured. *Rausch v. Reinhold,* 716 N.E.2d 993, 1002 (Ind. Ct. App. 1999); *Cromer v. Sefton,* 471 N.E.2d 700, 703 (Ind. Ct. App. 1984); *Donald v. Liberty Mutual Ins. Co.,* 18 F.3d 474, 480-81 (7th Cir. 1994).[4] Once a personal injury plaintiff succeeds in obtaining a judgment against the insured, he can bring an action against the liability carrier if it refuses to honor the terms of the insurance policy. *Cromer,* 471 N.E.2d at 703. In other words, in Indiana an injured plaintiff "stands in the legal shoes" of the insured, and his claim can be no greater than the insured's claim would be against his own insurer under the insurance policy. *See Araiza v. Chrysler Ins. Co.,* 699 N.E.2d 1162, 1163 (Ind. Ct. App. 1998), *rehearing granted in part and modified in, Araiza v. Chrysler Ins. Co.,* 703 N.E.2d 661 (Ind. Ct. App. 1998); *see also Selleck v. Westfield Ins. Co.,* 617 N.E.2d 968, 970-71 (Ind. App. 1993) (*accord*); *Redar v. Allstate Ins. Co.,* 497 N.E. 2d 566, 568 (Ind. Ct. App. 1985) (*accord*); *Motorists Mut. Ins. Co. v. Johnson,* 218 N.E.2d 712, 715 (Ind. App. 1966).

Thus because Wolverine's contractual duty runs only to Gingery, the plaintiffs can only recover insurance proceeds insofar as their rights derive from Gingery's rights under his homeowner's policy. *See Cromer,* 471 N.E.2d at 703 ("[T]here is no duty or fiduciary relation running from the insurer to the injured plaintiff. The insurer's only duty is to the insured on its contract."); *cf. State Farm Fire & Cas. Co. v. Fullerton,* 118 F.3d 374, 385-86 (5th Cir.

---

[4] Gingery's homeowner's policy also reflects this position, stating that "no action with respect to [personal liability insurance] can be brought against us until the obligation of the **insured** has been determined by a final judgment or agreement signed by us."

1997) (noting that by holding that tort victims' rights are derivative of the insured, they have placed Texas among the bulk of other jurisdictions that have considered the question). In this context, we examine the plaintiffs' claims. Gingery's actions fall outside his policy with Wolverine because they have been held to be intentional in his criminal case. The district court held that Gingery is estopped from asserting that his acts were unintentional and he has not appealed that ruling. Accordingly, the plaintiffs, relegated as they are to standing in Gingery's "legal shoes," may not seek indemnification from Wolverine under Gingery's homeowner's policy.

The plaintiffs' inability to recover insurance proceeds does not wholly deprive them of a remedy. They can still obtain damages against Gingery in their civil action, although Gingery may not be able to satisfy the judgment. However, whatever cause of action the plaintiffs eventually choose to pursue against Gingery, it will be his responsibility, and not the responsibility of Wolverine, to pay the damages caused by his actions.

## IV.

For the foregoing reasons we affirm the district court.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*