In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 07-4004 & 08-2020

JIM AARON,

*Plaintiff,*

*v.*

SUSAN J. MAHL,

*Defendant-Appellant,*

*v.*

MERRILL LYNCH, PIERCE,
FENNER & SMITH,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 03 CV 656—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED OCTOBER 23, 2008—DECIDED DECEMBER 18, 2008

Before BAUER, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Susan Mahl and Jim Aaron were live-in lovers in southern California in the late 1990s. But the romance only lasted until 2001 when Aaron left Mahl for another woman. However, for the past seven years or so, Aaron has been arduously pursing Mahl, from California to Indiana and then South Carolina; but sadly, not because he is having second thoughts about the demise of their relationship—as you will soon learn, he has quite a different motivation. In the meantime, Mahl has been drastically reinventing herself. And for good reason—in early 2000, a California law firm sued Mahl for what was essentially embezzlement from that firm during her tenure as its managing partner. That suit resulted in a judgment for a little more than a million dollars in favor of the firm against Mahl. Not surprisingly, Mahl left the practice of law, left California, changed her last name to Scott (which is how we will refer to her from this point on) and moved eventually to South Carolina where she apparently still resides. At some point in this transformation, Scott opened IRA accounts in LaPorte, Indiana, the proceeds of which are at the heart of the present dispute (and the reason for Merrill Lynch being in this case). And the inspiration for Aaron's continued interest in Scott? According to Aaron, the California law firm assigned its judgment against Scott to him (which may seem odd, but that is not important to this appeal) and he has been attempting—unsuccessfully so far—to collect on that judgment. Up to this point, these disputes have journeyed through state and federal courts in California, Indiana, and South Carolina. Today we determine whether an Indiana district court properly granted Merrill Lynch interpleader as the holder of some

of the assets over which Aaron and Scott are engaged in tug of war.

## I. Background

Aaron brought these matters to the Indiana court system by seeking to domesticate the California judgment in the circuit court of LaPorte County, Indiana, where some of Scott's assets were located. The LaPorte Circuit Court entered a temporary restraining order against Scott in December 2001, prohibiting her from transferring those assets. Scott promptly violated the court order and moved the assets into accounts with Merrill Lynch.

The LaPorte Circuit Court domesticated Aaron's assigned judgment and held Scott in contempt for moving the funds. It also entered three orders in proceedings supplemental that are pertinent to this appeal. The first order, entered in January 2003, ordered Merrill Lynch not to deliver the assets to Scott or any other person and not to dispose of or transfer the assets. Like the parties, we will refer to this as the "freeze order." Because the Merrill Lynch accounts contained retirement funds, Scott challenged Aaron's right to execute on the funds under Indiana law. The second order, entered in June 2003, determined that Indiana law did not exempt Scott's funds from execution by Aaron; however, it also determined that it could not order the assets moved by Scott in violation of the

temporary restraining order "back to Indiana."[1] The parties understandably found the order confusing. The third order, which we will address momentarily, explained the reasoning behind the second order.

Despite the LaPorte Circuit Court's second order that the funds could not be ordered back to Indiana, Aaron sought and obtained an ex parte writ of execution from the clerk of the court, in attempt to have the Merrill Lynch funds turned over to him. Merrill Lynch, still bound by the freeze order, refused to comply. Scott filed a motion to quash the writ of execution, and the LaPorte Circuit Court set a hearing on the issue. Rather than wait for the hearing, Aaron filed a complaint against Scott and Merrill Lynch in the U.S. District Court for the Northern District of Indiana. Noting that Aaron's precise legal theory of recovery was unclear, the district court construed Aaron's complaint as requesting that the court enforce the writ of execution and require Merrill Lynch to turn over the funds to which Aaron was entitled. Merrill Lynch filed a counterclaim and cross-claim against Aaron and Scott for interpleader.

In September 2004, the district court stayed the case pursuant to the *Colorado River* doctrine[2] while the LaPorte

---

[1]  Scott appealed, and the Indiana Court of Appeals affirmed the LaPorte Circuit Court's June 2003 determination that Indiana law did not exempt Scott's retirement accounts from execution by Aaron. *Mahl v. Aaron*, 809 N.E.2d 953, 958-59 (Ind. Ct. App. 2004).

[2]  *See Colorado River Water Conservation Dist. v. United States*, 424

(continued...)

Circuit Court considered Scott's motion to quash the writ of execution. In March 2005, the LaPorte Circuit Court entered its third order granting Scott's motion. The court explained its second order from June 2003 in greater detail because "in retrospect, the Order was not artfully drafted . . . and has created continuing confusion." The court clarified that the second order ruled that Indiana law did not provide Scott with an exemption from execution on her retirement accounts. The order was not intended, however, to allow Aaron to execute on the funds because the court lacked the power to order the funds back to Indiana—"the attachment of Defendant Scott's personal property should be accomplished through a court in her state of residence or an appropriate federal court." After this third order had been affirmed by the Indiana Court of Appeals, *see Aaron v. Scott*, 851 N.E.2d 309 (Ind. Ct. App. 2006), *trans. denied*, 869 N.E.2d 446 (Ind. 2007), the federal district court lifted its stay in February 2007 to address the parties' cross-motions for summary judgment.

The district court concluded that Merrill Lynch properly refused to comply with the now-void writ of execution and, therefore, Merrill Lynch was not personally liable to Aaron. The court also determined that interpleader was appropriate because Merrill Lynch was a disinterested stakeholder facing conflicting claims between Aaron and

---

[2] (...continued)
U.S. 800 (1976) (holding that in narrow circumstances a federal court can decline to exercise jurisdiction where a state court is contemporaneously exercising jurisdiction).

Scott. The court granted Merrill Lynch's motion for summary judgment on the interpleader claims, with a note that the order would become effective after Merrill Lynch deposited the funds with the federal court's registry (as required by statutory interpleader). The LaPorte Circuit Court then lifted the freeze order to allow Merrill Lynch to deposit the funds. The district court subsequently granted Merrill Lynch's motion to enter final judgment on its interpleader claim under Fed. R. Civ. P. 54(b). Finally, the district court awarded Merrill Lynch attorneys' fees from the interpleader stake. Scott appealed from the grant of interpleader and the award of attorneys' fees.

## II.  Interpleader

We begin, as we must, with the district court's subject-matter jurisdiction, which Scott contends was lacking. *Autotech Tech. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 742 (7th Cir. 2007). Aaron's complaint alleged diversity jurisdiction under 28 U.S.C. § 1332. Aaron is a citizen of Indiana, Scott is a citizen of South Carolina, and Merrill Lynch is a Delaware corporation with its principal place of business in New York. The amount in controversy was alleged to exceed $213,000. Aaron's allegations satisfied § 1332, so the district court clearly had subject-matter jurisdiction. Scott's concerns stem, apparently, from the district court's initial consideration of Merrill Lynch's interpleader claim under Fed. R. Civ. P. 22 and its subsequent use of statutory interpleader, set out in 28 U.S.C. § 1335.

Section 1335 provides the federal court with an independent basis for asserting subject-matter jurisdiction, but Rule 22 does not. *Commercial Nat'l Bank of Chi. v. Demos*, 18 F.3d 485, 488 (7th Cir. 1994). The district court permitted Merrill Lynch to proceed only under Rule 22 interpleader initially, because it, unlike statutory interpleader, does not require the stake to be deposited in the federal court's registry. (As previously mentioned, Merrill Lynch could not deposit the stake due to the LaPorte Circuit Court's freeze order.) Jurisdiction was proper, though, because the district court had diversity jurisdiction over Aaron's claim and supplemental jurisdiction over Merrill Lynch's interpleader claims. *See id.* That the district court later permitted Merrill Lynch to proceed under statutory interpleader—on the condition that the freeze order be removed and the stake deposited—did not deprive the court of subject-matter jurisdiction.[3] On appeal, we have jurisdiction because the district court entered final judgment in favor of Merrill Lynch under Fed. R. Civ. P. 54(b). 28 U.S.C. § 1291.

The district court's grant of summary judgment in favor of Merrill Lynch was based purely upon a decision of law,

---

[3]  Scott points out that the district court's switch from Rule 22 interpleader to statutory interpleader adversely affected the stake because statutory interpleader's mandatory deposit of the funds in the court's registry was a taxable event. Perhaps countervailing considerations warranted the switch; in any event Scott does not argue that the district court should not have allowed Merrill Lynch to assert statutory interpleader, so we will not address the issue further.

which we review de novo. *Officer v. Chase Ins. Life & Annuity Co.*, 541 F.3d 713, 714 (7th Cir. 2008). Interpleader is an equitable procedure used when the stakeholder is in danger of exposure to double liability or the vexation of litigating conflicting claims. *Indianapolis Colts v. Mayor and City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir. 1984). Interpleader is justified only when the stakeholder has a real and reasonable fear of double liability or conflicting claims. *Id.*; *Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.*, 448 F.2d 501, 504 (7th Cir. 1971). A "real and reasonable fear" does not require the party requesting interpleader to show that the claimants might eventually prevail. "Of course, the claims of some interpleaded parties will ultimately be determined to be without merit. That, however, is the very purpose of the proceeding and it would make little sense in terms either of protecting the stakeholder or of doing justice expeditiously to dismiss one possible claimant because another possible claimant asserts the claim of the first is without merit." *Union Cent. Life Ins. Co.*, 448 F.2d at 504; *John Hancock Mut. Life Ins. Co. v. Beardslee*, 216 F.2d 457, 460 (7th Cir. 1954) ("[T]he conflicting claims against the funds need not be such claims as can finally be proved in court."). On the other hand, the adverse claims must meet a "minimal threshold level of substantiality." *Indianapolis Colts*, 741 F.2d at 958. After a court has determined that interpleader is warranted, the claimants proceed to a second stage in which the merits of their claims are resolved. *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). The district court granted Scott's motion to stay the second stage of interpleader while this appeal was pending.

Scott argues that Merrill Lynch did not have a real and reasonable fear of double liability or the vexation of litigating conflicting claims. Scott's position is incredible, given that Merrill Lynch has been involved since 2003 in claims filed by Aaron spanning state and federal court (and multiple appeals) in a dispute over possession of funds that, from its inception, has been essentially between Aaron and Scott. There is little doubt that Scott, too, would have sued Merrill Lynch if Merrill Lynch had turned over the money to Aaron. In fact, her attorneys wrote a letter threatening to do so, which was attached as an exhibit to Merrill Lynch's claim. Scott presents two arguments against Merrill Lynch's real and reasonable fear, based upon the legitimacy of Aaron's claims.

First, Scott argues that res judicata determines the outcome of this suit. Res judicata, or claim preclusion, bars the relitigating of claims if "the cause of action has been fully and finally determined on the merits between the same parties by a court of competent jurisdiction." *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (citing *Neese v. Kelley*, 705 N.E.2d 1047, 1051 (Ind. Ct. App. 1999)). Res judicata bars not only those issues actually decided in the prior suit, but all other issues which could have been brought. *Hondo, Inc. v. Sterling*, 21 F.3d 775, 779 (7th Cir. 1994). Scott believes that the LaPorte Circuit Court's June 2003 order decided on the merits that the funds could not be returned to Indiana, i.e., that Scott was entitled to possession of the funds. Aaron's claim, she argues, could not be the basis for a real and reasonable fear of conflicting claims because Aaron already lost that battle in state court.

On the contrary, the June 2003 order decided that Scott's funds were not exempt from execution by Aaron under Indiana law, but the court could not order the funds back to Indiana. Though the order was somewhat opaque, the court's explanation in its March 2005 order was clear:

> The June 13, 2003 Order indicates that this Court could not order the funds back to Indiana. The Court was and continues to be of the opinion that the attachment of Defendant Scott's personal property should be accomplished through a court in her state of residence or an appropriate federal court. Consequently, this Court does not have the ability to order the assets held by Merrill Lynch to be turned over to the Plaintiff in partial satisfaction of the judgment. Only a South Carolina court or a federal court can do that.

(internal citation omitted). The LaPorte Circuit Court's decision that it lacked the ability to order the funds back to Indiana is most decidedly not in Scott's favor on the merits. *See Jarrard*, 408 F.3d at 916 ("[Appellant] displays a less-than-complete understanding of the relevant doctrine at issue. The . . . dismissal on the basis of jurisdiction certainly did not amount to a full and final adjudication on the merits . . . so res judicata, or claim preclusion, clearly does not apply here.").[4] Further, the LaPorte Circuit

---

[4] Though we must respect the decision of the LaPorte Circuit Court, we note that its determination that it had personal

(continued...)

[4] (...continued)

jurisdiction over garnishee-defendant Merrill Lynch in the proceedings supplemental might have allowed it to order Merrill Lynch to move the funds back to Indiana. *See State Farm Mut. Auto. Ins. Co. v. Estep*, 873 N.E.2d 1021, 1033 n.13 (Ind. 2007) (Boehm, J., concurring in part and dissenting in part) (noting that a garnishee's presence in proceedings supplemental is necessary to acquire jurisdiction over the debtor's property that is in the garnishee's possession). Obviously the court had the power to order Scott to return the funds, but Scott had already been violating the court's order to return the funds for two years at that point.

As noted at oral argument, in reality the funds are no more than an electronic entry in Merrill Lynch's database system and are not sitting in a suitcase in a vault somewhere outside of the state of Indiana. Even under the restrictive view that the funds were located in South Carolina and beyond the court's in rem jurisdiction, the Supreme Court has noted that "the maxim that personalty has its situs at the domicile of its owner is a fiction of limited utility." *Hanson v. Denckla*, 357 U.S. 235, 249 (1958) (footnote omitted). Indiana courts have ignored the maxim and declined to exercise jurisdiction in Indiana where it would have been inappropriate. *See Saler v. Irick*, 800 N.E.2d 960, 971-72 (Ind. Ct. App. 2003) (holding that in rem jurisdiction was not appropriate where the annuities at issue were not present in Indiana, even though the decedent's domicile was Indiana). Conversely, the court may have been able to exercise in rem jurisdiction in an appropriate situation such as this one, where in rem jurisdiction was lacking only because Scott removed the funds from Indiana in violation of the court's order. *See, e.g., United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d 713, 716-17 (7th

(continued...)

Court's decision on the limitation of its own jurisdiction has no bearing on the powers wielded by the federal court.

Scott also argues res judicata on the basis of Aaron's state-court appeal. The Indiana Court of Appeals affirmed the LaPorte Circuit Court's March 2005 order on two grounds relevant here: (1) the LaPorte Circuit Court's clerk lacked the authority to issue a writ of execution in contravention of the court's prior order; and (2) Aaron defaulted his argument that the court did have jurisdiction to order the funds to Indiana because he never appealed from the June 2003 order. Res judicata does not apply to bar Aaron's claim on the basis of these decisions, either.[5]

Second, Scott argues that Merrill Lynch did not have a real and reasonable fear of double liability or the vexation of litigating conflicting claims because Aaron's only theory of recovery espoused in the federal complaint was frivolous from the outset. Aaron's complaint set out in twelve

---

[4] (...continued)
Cir. 1985) ("[A] court's jurisdiction remains over the *res* in an *in rem* action if the *res* is removed or released accidentally, fraudulently, or improperly from the court's control.") (citing *The Rio Grande*, 90 U.S. 458, 465 (1874)).

[5] Scott similarly argues that collateral estoppel applies. Collateral estoppel, or issue preclusion, prevents a party from relitigating issues that have already been litigated and decided. *Wolverine Mut. Ins. v. Vance ex rel. Tinsley*, 325 F.3d 939, 943 (7th Cir. 2003). "A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue." *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000).

paragraphs that Aaron had a judgment against Scott entered by the LaPorte Circuit Court, Merrill Lynch controlled five accounts belonging to Scott, Aaron had a writ of execution against those accounts, and Merrill Lynch refused to honor the writ. The complaint named both Scott and Merrill Lynch as defendants. When the district court stayed the action pending the LaPorte Circuit Court's determination of the writ of execution's validity, it made two observations that Scott finds significant. First, it noted that Aaron's theory of recovery was unclear but he appeared to be asking the court to enforce the writ of execution and require Merrill Lynch to turn over the funds to which Aaron was entitled. Second, the district court noted that the state court's determination of the writ's validity would likely dispose of all claims in the federal case.

When the district court lifted the stay nearly three years later, it permitted the parties to supplement their motions for summary judgment, after which the court granted interpleader for Merrill Lynch. The district court's decision permitting the case to proceed was contrary to its aforementioned two observations because the case was proceeding under a different theory than expected and the state court decision had not disposed of all the claims.[6] By granting the motion, Scott complains, the district court allowed Aaron's new theory—replevin—to "tip-toe[] in through the side door." Scott asserts that the district court should have dismissed the case because Aaron's only

---

[6] The able and experienced district court judge can hardly be faulted for failing to be clairvoyant.

theory of recovery in the complaint had been foreclosed when the LaPorte Circuit Court conceded that its clerk should never have issued Aaron the writ of execution. But Aaron's complaint, admittedly more focused on the writ of execution, also named Scott as a defendant, alleged that he had a judgment against her, and claimed to be entitled to her accounts at Merrill Lynch. Scott wants the case to be dismissed because Aaron's complaint did not state a claim — he did not use the word "replevin" or identify any other workable legal theory. Under the notice pleading standard, of course, a complaint need not contain legal theories. *See, e.g.*, *O'Grady v. Vill. of Libertyville*, 304 F.3d 719, 723 (7th Cir. 2002) (noting that although the plaintiff did not advance a particular theory until the summary judgment stage, the complaint was adequate to put the defendant on notice). Aaron's complaint gave Scott notice that he had a judgment against her and he believed that he was legally entitled to the money in her Merrill Lynch accounts.[7] Even

---

[7]   The Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ——, 127 S. Ct. 1955, 1964-65 (2007), that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." (alteration in original) (internal quotation marks omitted). Oddly, Scott uses this quotation to argue that in Aaron's complaint, "there is no label, let alone any of the elements of a cause of action for replevin." Aaron did not need to provide labels and elements; he merely needed factual allegations that were "enough to raise a right to relief above the speculative level." *Id.* at 1965.

though the writ of execution should not have been issued, Aaron's claim was not frivolous from the outset, and the district court did not err by considering Aaron's claim under another theory.[8]

Scott's discussion about whether Aaron has stated a claim diverts our attention from the question presented by this appeal, though: Did Merrill Lynch have a real and reasonable fear of double liability or conflicting claims—claims which meet a "minimal threshold level of substantiality"? *Indianapolis Colts*, 741 F.2d at 957-58. Aaron and Scott have asserted conflicting claims against the assets held by Merrill Lynch, and those claims easily meet the standard for substantiality. Aaron has a judgment against Scott and a state court's determination that her funds are not exempt from execution. Scott was the owner of the funds and would like to possess them once again. Merrill Lynch's fear of conflicting claims was real and reasonable, and the district court properly granted interpleader to

---

[8]   Scott also asserts that Aaron will never be able to prevail under a replevin theory. She explains which elements of replevin under Indiana law Aaron has not yet attempted to show, e.g., under Indiana Code § 32-35-2-4, to recover for replevin Aaron must file an affidavit showing that he is the owner of the property or lawfully entitled to the property. This argument is premature; both parties will have the opportunity to prove entitlement to the funds in the second stage of interpleader, which the district court stayed pending this appeal. To prevail, Aaron will need to prove that he is entitled to the funds under replevin or another legal theory, but his failure to do so at this time is not fatal to Merrill Lynch's interpleader claim.

Merrill Lynch. *See Union Cent. Life Ins. Co.*, 448 F.2d at 503 (noting that interpleaded parties were proper because they were adverse claimants who claimed or might claim to be entitled to the funds held by the stakeholder); *Metro. Life Ins. Co. v. Whitler*, 172 F.2d 631, 632 (noting that statutory interpleader was appropriate where two individuals claimed to be the beneficiary of a life insurance policy); *cf. Indianapolis Colts*, 741 F.2d at 957 (noting that the parties were not claimants to the same stake where one party sought to assert ownership of the NFL franchise through eminent domain but the other party had no conflicting claim of ownership); *Francis I. duPont & Co. v. O'Keefe*, 365 F.2d 141, 142-43 (7th Cir. 1966) (noting that interpleader was properly denied where the appellant faced no risk of conflicting claims because an estate's administrator was vested with exclusive title to indebtedness appellant owed to the decedent).

### III.  Attorneys' Fees

Scott also argues that the district court erred by granting Merrill Lynch attorneys' fees. She objects to the timing of the award and to the award being taken from the interpleader stake, but she does not contest the amount of fees awarded. We review the district court's grant of attorneys' fees for abuse of discretion. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008).

Scott objects to the timing of the award because the court's order occurred while Scott's appeal was pending. Generally, a party's filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case

involved in the appeal. *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000). Although district courts commonly award attorneys' fees while an appeal is pending, *Apostol v. Gallion*, 870 F.2d 1335, 1337 (7th Cir. 1989), Scott contends that the court should not have granted fees out of the interpleader stake because her appeal turned on whether interpleader should have been granted. Because interpleader was proper, Scott's concern is moot.

The parties do not disagree with the standard used by the district court to award attorneys' fees—a court may award attorneys' fees and costs to a prevailing stakeholder in an interpleader action if the costs are determined to be reasonable and the stakeholder's efforts are not part of its normal course of business. *See Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.*, 493 F.2d 76, 79 (7th Cir. 1974); *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965). The district court found that Merrill Lynch was a disinterested stakeholder whose efforts were not part of its normal course of business. It also found that the case was complex and involved extensive discovery and motions practice, Merrill Lynch did nothing improper to prolong the proceedings, was not responsible for "the filing of multiple lawsuits in multiple jurisdictions," and acted in good faith and with diligence throughout the federal litigation. The court's findings support its conclusion to award Merrill Lynch attorneys' fees.

The parties also agree that courts often award attorneys' fees from the interpleader stake. *First Trust Corp. v. Bryant*, 410 F.3d 842, 856 (6th Cir. 2005) ("Despite the lack of explicit statutory authorization, modern federal practice

follows the traditional equity rule that gives the trial court discretion to allow a disinterested stakeholder to recover attorney's fees and costs from the stake itself." (internal quotation marks omitted)). Scott contends that the court had the discretion to—and should—make Aaron "pay the freight." The key word is "discretion," and the court properly exercised it. This argument, too, is without merit.

## IV.  Conclusion

We AFFIRM the district court's grant of summary judgment on the interpleader claims to Merrill Lynch, as well as the award of attorneys' fees.