In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 24-2315

RAZA SIDDIQUI, et al.,

*Plaintiffs-Appellants*,

*v.*

NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES & TECHNICIANS – COMMUNICATIONS WORKERS OF AMERICA, et al.,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22−cv−05732 — **Manish S. Shah**, *Judge*.

---

ARGUED JANUARY 28, 2025 — DECIDED MARCH 24, 2025

---

Before HAMILTON, KIRSCH, and MALDONADO, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Members of a local union sued their national parent organization for imposing an illegal trusteeship. The parties eventually resolved the case by entering into a consent judgment, leaving only one decision for the district court: whether to award attorneys' fees to the local union members. The district court declined to do so. Because it did

not abuse its substantial discretion to make that decision, we affirm.

I

This case involves a dispute between a national labor union and members of one of its local unions. Defendants are the National Association of Broadcast Employees and Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America (NABET-CWA), and three union executives. Plaintiffs are members of NABET-CWA Local 41 (Local 41), including plaintiff Raza Siddiqui. We refer to defendants collectively as the national union and plaintiffs collectively as Siddiqui.

The dispute giving rise to this appeal began when the national union placed Local 41 under a temporary trusteeship in the wake of a Local 41 officer election. Siddiqui sued the national union under § 304(a) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 464(a), for imposing the trusteeship illegally. The district court agreed with Siddiqui that the national union had imposed the trusteeship in bad faith and granted Siddiqui a temporary restraining order, which it later converted into a preliminary injunction. After settlement negotiations and some motion practice, the district court entered a consent judgment at the parties' request. This consent judgment converted the preliminary injunction into a permanent injunction that dissolved the trusteeship and required the national union to pay Local 41 about $26,000 in trusteeship costs. The consent judgment resolved all issues in the case but one: whether Siddiqui was entitled to recover attorneys' fees from the national union (and, if so, how much). The parties briefed the issue, and, in the end, the district court

denied Siddiqui's request for attorneys' fees in an oral ruling from the bench.

In its oral ruling, the district court noted its broad discretion to decide whether to award fees and recognized the presumption in American law against doing so, known as the American Rule. See *Hall v. Cole*, 412 U.S. 1, 4–5 (1973); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). Although it found two exceptions to the American Rule could apply, it determined neither justified fee shifting.

First, the district court discussed the bad faith exception. Under this exception, if the losing party acted "vexatiously, wantonly, or for oppressive reasons"—in other words, in bad faith—a district court may award attorneys' fees as a compensatory measure. *Hall*, 412 U.S. at 5 (quotation omitted); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107–08 (2017). The district court decided that the national union imposed the trusteeship in bad faith but that both sides litigated the ensuing dispute in good faith. So, it concluded the degree of bad faith did not justify fee shifting.

Second, the district court considered whether Siddiqui had generated common benefits. The common benefit exception "involves cases in which the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and … an award … operate[s] to spread the costs proportionately among them." *Hall*, 412 U.S. at 5 (quotation omitted). Before analyzing the applicability of this exception, the district court briefly pondered its continuing vitality. It said, "I'm not so sure that the contemporary conception of federal judicial power includes this common benefit principle in the absence of any congressional action." And it wondered whether today's Supreme Court "might even

conclude that *Hall* was wrongly decided." Continuing, "I have no opinion on that," the district court then assessed the exception anyway. It found Siddiqui conferred common benefits on Local 41 and the national union, but it ultimately concluded neither benefit was so great that it merited an award of attorneys' fees.

Siddiqui now appeals, arguing the district court committed reversible error by declining to grant him fees given its bad faith and common benefit findings. He argues the district court's observations on the common benefit exception are further evidence of faulty reasoning that justify reversal.

## II

We review a district court's decision whether to award attorneys' fees for abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991). A district court abuses its discretion "if it reaches an erroneous conclusion of law … or reaches a conclusion that no evidence in the record supports as rational." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022) (quotation omitted). As long as the district court provides some explanation for its decision, we will not overturn that decision unless no reasonable person would agree with it. *REXA, Inc. v. Chester*, 42 F.4th 652, 671, 673–74 (7th Cir. 2022).

Siddiqui argues that our standard of review should instead be de novo, but he is incorrect. He bifurcates the district court's fee decision, arguing that we review de novo the initial evaluation of a plaintiff's entitlement to fees and conceding only that we review for abuse of discretion any resultant choice about the amount of fees to award. It is true that any legal analysis related to fee determinations receives de novo review. *Stericycle*, 35 F.4th at 559. But this appeal does not

present a question of legal analysis. Siddiqui does not challenge the legal framework the district court set out for its fees determination, only the decision the court made after properly applying that framework. Contrary to Siddiqui's argument, we review the threshold decision whether plaintiffs are entitled to fees for abuse of discretion. *Aaron v. Mahl*, 550 F.3d 659, 667 (7th Cir. 2008). In short, the district court's discretion to award attorneys' fees encompasses both when to award fees and in what amount.

We have said time and again that our review of a district court's discretion on this matter is "highly deferential." E.g., *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019) (quotation omitted); *Est. of Borst v. O'Brien*, 979 F.2d 511, 514 (7th Cir. 1992) ("We can think of few matters more wasteful of judicial resources than ancillary litigation over an attorneys' fee award."). Such decisions receive "significan[t] deference" and "wide latitude." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quotation omitted). "If ever there was a case for reviewing the determinations of a trial court under a highly deferential version of the 'abuse of discretion' standard," it is in the case of attorneys' fees. *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988). Our review is so deferential because "(1) [the district court] possesses superior understanding of the litigation and there exists a desirability of avoiding frequent appellate review of what essentially are factual matters; (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding a second major litigation strictly over attorneys' fees is high." *Vega v. Chi. Park Dist.*, 12 F.4th 696, 702 (7th Cir. 2021) (alteration in original) (quotation omitted).

Although district courts' equitable discretion regarding attorneys' fees is well established, the American Rule presumes against fee shifting. *Hall*, 412 U.S. at 4–5. "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline*, 421 U.S. at 247. Further, the bad faith and common benefit exceptions to the American Rule are permissive, not mandatory. That is because the power to award attorneys' fees is itself a discretionary, inherent, equitable power—a point Siddiqui admitted before the district court. *Hall*, 412 U.S. at 4–5. Courts should preserve these exceptions "for situations in which overriding considerations indicate the need" to award attorneys' fees. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970).

The district court dutifully set out and applied the American Rule and two of its exceptions. It did not need to conduct any further legal analysis. It did not abuse its discretion when it then declined to exercise its equitable discretion to award attorneys' fees.

The district court appropriately assessed the bad faith exception and reasonably concluded that the national union's bad faith imposition of the trusteeship did not create an overriding need to award fees. It found the parties' subsequent good faith litigation served as a counterbalance. And it properly adhered to the rule that it should award attorneys' fees only when "overriding considerations indicate the need." *Id.* It acknowledged that all bad faith trusteeships should be deterred but concluded that such deterrence is achieved by dissolving the trusteeship, not by awarding attorneys' fees absent an overriding need, and thus decided not to award fees.

That was a legally sound and entirely reasonable decision, comfortably within the court's broad discretion.

The district court likewise correctly analyzed the common benefit exception and reached a reasonable conclusion within its discretion. The animating principle behind this exception is the reallocation of litigation costs so that all those who benefit from the result share the expense. *Alyeska Pipeline*, 421 U.S. at 245. For example, a union member who sues his union to vindicate a free speech right to allege undemocratic actions by union officers (a right the LMRDA assured him) has "rendered a substantial service to his union as an institution and to all of its members." *Hall*, 412 U.S. at 2–3, 8. So, "reimbursement of [his] attorneys' fees out of the union treasury simply shifts the costs of litigation to the class that … benefited from them and that would have had to pay them had it brought the suit." *Id.* at 8–9 (quotation omitted).

Here, the district court found two common benefits. It determined that Siddiqui conferred a common benefit on all union members by vindicating the principle of local governance. But the district court didn't think that benefit presented an overriding need to shift fees because it was not the primary motivator behind what the court deemed a hyperlocal, political fight. The conflict instead centered on the mechanics of union governance, which the court considered private feuding without general significance that did not produce the kind of institutional success warranting fee shifting. The district court also found Siddiqui conferred a second common benefit by getting the national union to pay for the costs of the trusteeship. But it thought this benefit was modest, so it declined to spread Siddiqui's attorneys' fees across the membership of either the national union or Local 41. That is, it viewed the

roughly $26,000 the national union paid Local 41 as relatively insubstantial, so it was not concerned that failing to distribute the fees Siddiqui spent recouping that money from the national union would unjustly enrich other union members, nor was it worried that Siddiqui would not have sued the national union without fee shifting. Each of these conclusions was reasonable, and the district court was perfectly entitled to make them. It did not abuse its discretion by finding common benefits existed but not to a degree justifying fee shifting.

Siddiqui also asserts that the district court committed legal error by basing its decision to deny fees on a prediction that the current Supreme Court would overturn *Hall* were it presented the opportunity. The district court did no such thing. It merely made some non-dispositive observations. It wondered whether the Supreme Court, writing on a blank slate without precedent like *Hall*, would empower courts to award attorneys' fees absent statutory authorization. And it expressed doubt that the contemporary conception of federal judicial power encompasses the common benefit exception. But the district court nonetheless applied the exception to this case—as it must, absent contrary Supreme Court guidance—and found it existed, just not sufficiently to warrant awarding attorneys' fees. Its observations were not improper and its decision declining to shift fees was not an abuse of discretion.

AFFIRMED